IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| DAWN PEETZ, | ) | 4:04CV3209 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM** |
| | ) | **AND ORDER** |
| JOANN NOONAN AND | ) | |
| SIDNEY KEELAN, | ) | |
| | ) | |
| Defendants. | ) | |

This matter is before the court upon Defendants' motion to dismiss under Rule 12(b)(1) and (6). (Filing 42). The motion is based on the Amended Complaint (filing 41). Plaintiff's only response to the motion was to file a "Second Amended Complaint" (filing 46) without seeking prior leave of the court as required by the local rules. As the Second Amended Complaint moots portions of the motion to dismiss, I will on my own motion consider it to be properly filed.

For purposes of this motion to dismiss, I take the allegations of the Second Amended Complaint as true. St. Croix Waterway Ass'n v. Meyer, 178 F.3d 515, 520 (8th Cir.1999). This is a civil rights action. Plaintiff was terminated from her job as a billeting clerk with the State of Nebraska Military Department. Defendant Noonan is the business manager for the Military Department and was Plaintiff's immediate supervisor. Defendant Keelan is the Human Resources Manager for the State of Nebraska Military Department and in that capacity oversees recordkeeping and is responsible for hiring and firing. (Filing 46 ¶ 17.) "[D]uring the course of her employment Plaintiff discovered that her supervisor, Defendant Noonan, was utilizing government property for her own benefit and was failing and refusing to reimburse the government for its use." (Filing 46 ¶ 12.) Both the Nebraska National Guard and the State Auditor's office investigated Noonan's "activities," and Plaintiff

participated in these investigations.  (Filing 46 ¶ 13.)  Plaintiff was in her initial probationary period at the time of her participation in the investigations into Noonan's activities.  (Filing 46 ¶ 16.)  Plaintiff "spoke out on matters of public concern by cooperating" with the two investigations.  (Filing 46 ¶ 24.)  Noonan was suspended for a period of time, and during this time Plaintiff performed Noonan's business manager activities as well as the duties of her billeting clerk position. (Filing 46 ¶ 14.)

Noonan s return to work after her suspension occurred during the week in which Plaintiff's probationary period was scheduled to end.  Upon Noonan's return, she "caused the termination of Plaintiff's employment approximately one day prior to the expiration of her probation." (Filing 46 ¶ 16.)  "[A]s a result of the Plaintiff's exercise of her First Amendment rights, Defendant Noonan recommended that Plaintiff be terminated from her employment."  (Filing 46 ¶ 25.)  Upon the recommendation of Noonan, Keelan terminated Plaintiff.  (Filing 46 ¶ 21.)

Plaintiff asserts that Keelan knew or should have known that Noonan's actions in causing Plaintiff's termination were retaliatory.  (Filing 46 ¶ 18.)  She further claims that Keelan caused derogatory and false documents which placed her in a false light to be placed in her personnel file, that these documents were utilized for her termination, and that after her termination Keelan removed the documents from Plaintiff's file–all without notice to Plaintiff.  (Filing 46 ¶¶ 19,21-22.)

In considering a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the allegations in the complaint must be viewed in the light most favorable to the Plaintiff.  Fusco v. Xerox Corp., 676 F.2d 332, 334 (8th Cir. 1982).  "[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief."  Conley v. Gibson, 355 U.S. 41, 45-46 (1957) (footnote omitted).  "Thus, as a practical matter, a dismissal under Rule 12(b)(6) is likely to be granted only in

the unusual case in which a plaintiff includes allegations that show on the face of the complaint that there is some insuperable bar to relief." Jackson Sawmill Co. v. United States, 580 F.2d 302, 306 (8th Cir. 1978), cert. denied, 439 U.S. 1070 (1979).

§ 1983 claims

Both defendants sought dismissal of the § 1983 claim insofar as it sought compensation from them in their official capacities, asserting they had immunity from such claims. I agree, but Plaintiff has cured the defect in the Second Amended Complaint by seeking monetary relief only against defendants in their individual capacities.

Both defendants also assert that there is Eleventh Amendment immunity against § 1983 claims against the state. However, the Second Amended Complaint seeks only injunctive relief against the defendants in their official capacities. There is no Eleventh Amendment immunity from such claims. Murphy v. Arkansas, 127 F.3d 750, 754 (1997) ("State officials acting in their official capacities are § 1983 "persons" when sued for prospective relief, and the Eleventh Amendment does not bar such relief.").

Defendant Keelan asserts that the claim against him should be dismissed for failure to state a claim, since there are no allegations of specific acts taken by him. The Second Amended Complaint cures this problem by asserting that Keelan terminated Plaintiff upon Noonan's recommendation.

Noonan asserts that the claim against her should be dismissed because the complaint does not meet a heightened pleading requirement for suits seeking damages from governmental officials in their individual capacities. Edington v. Mo. Dep't of Corr., 52 F.3d 777, 779 n.3 (8th Cir. 1995) recognized a common law heightened pleading requirement in § 1983 suits against individual defendants. However, the

Eighth Circuit has recently abrogated this heightened pleading requirement.  Doe v. Cassel, No. 04-3581, 2004 WL 82035, at *2 (8th Cir. Apr. 11, 2005) ("We now recognize Edington's heightened pleading requirement in § 1983 suits against individual defendants has been abrogated.").

Noonan also asserts that the claim against her should be dismissed because it does not allege that Plaintiff's speech was of public concern and not merely job-related and because it does not allege a time frame for the speech. The Second Amended Complaint generally alleges that "Plaintiff spoke out on matters of public concern by cooperating with two investigations . . . of  her supervisor Defendant Noonan, one of which was conducted by the Nebraska National Guard and the other . . .by  the Nebraska State Auditor's office."  (Filing 46 ¶ 24.)  It also alleges that Plaintiff discovered that Noonan was utilizing government property for personal benefit without reimbursing the government for its use.  (Filing 46 ¶ 12.)  Together, these are sufficient allegations that the speech was of public concern.  Though the Second Amended Complaint does not allege the dates on which Plaintiff participated in the  governmental investigations of Noonan, it asserts that Noonan was suspended (presumably during the pendency of the investigations) and terminated Plaintiff within one week of her return to work after suspension.  (Filing 46 ¶¶ 14,16.)  For purposes of a motion to dismiss, this is enough to establish a causal connection between Plaintiff's speech and her termination.

<u>State Law Claims</u>

The complaint on which the motion to dismiss was based asserted state law claims based on freedom of speech.  Defendants seek dismissal of those claims. Those claims have been dropped in the Second Amended Complaint.  I find that Plaintiff has abandoned the state law claims and will deny the motion to dismiss them as moot.

## "Public Policy" Claims

Plaintiff also raises a "public policy" claim, asserting that "Plaintiff's termination was contrary to public policy in that Plaintiff was terminated from her employment in retaliation for her exercise of her rights under the United States and Nebraska Constitutions . . . [and] contrary to public policy." (Filing 46 ¶¶ 31-32.) To the extent this raises a federal claim, it is no different that the § 1983 claim and I will dismiss it as duplicative. This fails to state a claim under state law because it does not identify the public policy allegedly violated. Under the public policy exception to the at-will employment doctrine, an employee can claim damages for wrongful discharge when the motivation for the firing contravenes public policy. See, e.g., Jackson v. Morris Communications Corp., 657 N.W.2d 634, 637 (Neb. 2003). However, that public policy must be very clearly mandated. See Schriner v. Meginnis Ford Co., 421 N.W.2d 755 (Neb. 1988) (although enactment of statute criminalizing odometer fraud was declaration of public policy against odometer fraud, wrongful discharge based on report of odometer fraud was actionable only if there was evidence employee acted in good faith when reporting the odometer fraud; granting summary judgment to employer because there was no evidence that employee had reasonable cause to believe employer acted unlawfully). Here, the complaint vaguely asserts that the termination was in retaliation for Plaintiff's exercise of her state constitutional rights–without specifying the applicable "right" or the manner in which the presence of that right in the state constitution states a public policy which was violated by Plaintiff's termination. Accordingly, I will dismiss the state law "public policy" claim for failure to state a claim.

IT IS ORDERED:

1.      On the court's own motion, Plaintiff is hereby given leave to file a Second Amended Complaint and the Second Amended Complaint filed at filing 46 is deemed properly filed;

2.     Any claims not raised in the Second Amended Complaint have been abandoned; and

3.     Defendants' motion to dismiss (filing 42) is granted to the extent that the state law "public policy" claim raised in the second cause of action is dismissed for failure to state a claim, and is otherwise denied.

April 19, 2005.                          BY THE COURT:

                                         s/Richard G. Kopf
                                         United States District Judge