IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| DAWN PEETZ, | ) |
| | ) Case No. 4:04CV3209 |
| Plaintiff, | ) |
| | ) |
| vs | ) **MEMORANDUM** |
| | ) **AND ORDER** |
| JOANN NOONAN, and | ) |
| SIDNEY KEELAN, | ) |
| | ) |
| Defendants. | ) |

In this 42 U.S.C. § 1983 retaliation case, Sidney Keelan (Keelan), one of the defendants, has filed a motion for summary judgment (filing 51). I will grant the motion. My reasons for doing so are set forth below.

## *I. BACKGROUND*

I first examine Dawn Peetz' (Peetz) claims. I then review the affidavits offered in support of and in opposition to the motion for summary judgment.

### *A. Plaintiff's Claims.*

The plaintiff's claims are set forth in a complaint signed only by her lawyer, Elaine A. Waggoner. In that document, Peetz, through her lawyer, claims that JoAnn Noonan (Noonan), who was the business manager of the State of Nebraska Military Department and Peetz' immediate supervisor, "caused" Peetz to be terminated from her job as billeting clerk one day before her probationary period would have expired. (Filing 46 ¶¶ 5, 7-16 (Second Amended Complaint).) Peetz asserts that Noonan caused her to be fired because Peetz participated in an investigation regarding

Noonan's improper use of government property. As a result, Peetz claims that Noonan violated Peetz' First Amendment rights (filing 46 ¶¶ 23-30), and Nebraska's public policy. (Filing 46 ¶¶ 31-32.) In addition to other relief, she seeks damages personally against Noonan.

Regarding her claims against Keelan, Peetz asserts, through her lawyer, the same theories of recovery (First Amendment retaliation and violation of Nebraska's pubic policy) and claims for damages predicated upon the same ultimate fact, to wit, the termination of the plaintiff from her job as a billeting clerk one day prior to the expiration of her probationary period. Specifically, Peetz asserts the following in her complaint against Keelan:

> 17. That Defendant Sidney Keelan is the Human Resources Manager for the State of Nebraska Military Department and oversees the record-keeping of that department and is the individual charged with the responsibility of hiring and firing for that area.
>
> 18. That Defendant Keelan knew or should have known that the actions of Defendant Noonan were retaliatory in nature.
>
> 19. That Defendant Keelan caused to be placed in Plaintiff's personnel file derogatory and false documents that caused her to be placed in a false light.
>
> 20. That after utilizing said documents for her termination Defendant Keelan removed them from Plaintiff's file.
>
> 21. That Defendant Keelan was responsible for Plaintiff's termination upon the recommendation of Defendant Noonan.
>
> 22. That all documents placed in Plaintiff's file and removed from Plaintiff's file that were derogatory and false were placed and removed without notice to Plaintiff.

(Filing 46 ¶¶ 17-22.)

### B. *The Affidavits.*

In support of the motion for summary judgment, Keelan submitted two affidavits. Both affidavits confirmed that Keelan did not terminate Peetz and played no role in her firing except to advise a supervisor about the provisions of a union contract.

In Keelan's affidavit, he swore to the following: (1) that he was the Human Resource Manager of the Nebraska Military Department, but that he had no authority to hire or fire civilian employees (Filing 52, Ex. 1 ¶¶ 1, 3); (2) that Keelan's supervisor was Colonel William Rein, and the Colonel asked Kellan to provide "an opinion as to whether or not permanent status can be denied an individual who was insubordinate, disrespectful with her supervisors, threatened her supervisor, and created an extremely hostile work environment" (id. ¶¶ 2,4); (3) that Keelan researched the contract between Nebraska and the public employee's union, concluded that an employee could be separated at any time during the probationary period without any grievance rights, and so advised Colonel Rein (id. ¶4); (4) that Keelan made "no decision whatsoever in determining whether or not Ms. Peetz should be denied permanent status" and that Keelan's only involvement was to advise Colonel Rein on the question of whether a probationary employee could be separated during the probationary period (id. ¶ 5); and (5) after Peetz had been fired, and while Keelan does not know what documents Peetz was referring to her complaint, he did remove certain documents from her personnel file, provided those documents to investigators after Peetz complained to the governor, and returned those documents to Peetz' personnel file upon completion of the investigation. (Id. ¶ 6.)

Colonel William Rein submitted an affidavit. (Filing 53, Ex. 2.) Rein confirmed that during the relevant time frame he was the Human Resources Officer

for the Nebraska Military Department, and that Keelan (and all other Human Resources employees) reported to him. (Id. ¶¶ 1-2.)  Rein's affidavit also confirmed that Keelan had no authority to hire and fire and that Keelan played no part in the termination decision except to advise Rein whether Peetz could be terminated.  (Id. ¶¶ 2, 3.)

The plaintiff submitted an affidavit.  (Filing 54.)[1]  The only potentially significant paragraphs of the affidavit were paragraphs 17-20.  Paragraphs 17 through 20 of the affidavit repeated verbatim the material portions of paragraphs 17 through 20 of the amended complaint.  I have earlier reproduced that language, and shall not repeat it here.  For now, suffice it to state that the plaintiff's affidavit did nothing more than repeat some but not all of the unsworn conclusions of the amended complaint prepared by her lawyer.[2]

## II. ANALYSIS

I examine first the merits of the motion for summary judgment.  After that, I briefly discuss the insufficiency of the plaintiff's affidavit.

### A.  *Keelan Has No Liability Because His Participation In the Termination Decision was Very Limited.*

An individual defendant such as Keelan, who plays some part in a retaliatory and adverse employment decision that violates the First Amendment, may have

---

[1] The affidavit that was filed is not complete in that when it was loaded to the electronic filing system by plaintiff's counsel paragraph 19 was omitted.  My chambers contacted the plaintiff's counsel, and plaintiff's counsel provided me with an unsigned copy of the affidavit. Regarding the missing paragraph, the unsigned copy shows that the affidavit repeated paragraph 19 of the amended complaint.

[2] The affidavit did not repeat paragraphs 21 and 22 of the amended complaint.

personal liability even though that defendant is not the decision-maker *if* "'he directly participates in [the] constitutional violation.'"[3] Springdale Educ. Ass'n v. Springdale School Dist., 133 F.3d 649, 653 (8th Cir. 1998) (examining the sufficiency of a complaint and holding that a school superintendent who lacked the power to discharge could be held individually liable based upon the allegations of the complaint that the supervisor placed the plaintiff on probation in retaliation for the employee's union activity) (quoting Andrews v. Fowler, 98 F.3d 1069, 1078 (8th Cir. 1996)). But there is a flip side.

When a employee who is not a decision-maker shows through a motion for summary judgment in a First Amendment retaliation case that he played only an insignificant role in the adverse employment action, summary judgment must be granted in that employee's favor. Hudson v. Norris, 227 F.3d 1047, 1053-1054 (8th Cir. 2000) (First Amendment retaliation case; on appeal, directing the grant of summary judgment in favor of various employees whose roles in the adverse employment action were limited). Thus, for example, the Court of Appeals has held that where a personnel officer was involved in a denial of a promotion by forwarding evaluations to the ultimate decision-maker and where that officer viewed the plaintiff as an "undesirable choice" for the promotion, summary judgment in favor of that personnel officer was required. Id.

I find and conclude that the material facts are undisputed. Keelan did not "directly participate" in the unconstitutional retaliation (assuming, without deciding, that there was one). The only competent evidence shows: (1) that Keelan did not have the power to hire and fire; (2) that Keelan did not make the decision to terminate Peetz; (3) that Keelan's role was limited to responding to a question put to him by his supervisor; and (4) that Keelan's response to the supervisor's question correctly

---

[3] I assume without deciding that such a circumstance would also trigger personal liability under Nebraska law.

recited the provisions of the relevant union contract regarding termination of probationary employees.

In arriving at this decision, I have largely ignored the plaintiff's affidavit. I next explain why I have done so.

### B. The Plaintiff's Affidavit is Incompetent Because It is Not Based on Personal Knowledge and Because It is Based Upon Unsupported Conclusions. Moreover, In Certain Respects, It is Irrelevant.

In order for a party to create a genuine issue of material fact by filing an affidavit alleging the existence or nonexistence of facts, the affidavit must "be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein." Fed. R. Civ. P. 56(e). An affidavit that fails to comply with this rule will be disregarded.

At a minimum, the Rule requires that the affidavit must establish the competence of the signer to testify about the subject matter of his or her affidavit; that is, the author must have personal knowledge to back up his or her sworn assertions. See, e.g., Fed. R. Evid. 602 ("A witness may not testify to a matter unless evidence is introduced sufficient to support a finding that the witness has personal knowledge of the matter."); Camfield Tires, Inc. v. Michelin Tire Corp., 719 F.2d 1361, 1367 (8th Cir. 1983) (sustaining grant of motion for summary judgment where an opposition affidavit about the reaction of a third person was not based upon personal knowledge of the signer, but rather was based on the surmise of the author of the affidavit); Cummings v. Roberts, 628 F.2d 1065, 1068 (8th Cir. 1980) (applying Rule 56(e), reversing district court's grant of summary judgment, and holding that affidavit by jail officer that investigation revealed certain facts about the condition of the plaintiff was not based upon personal knowledge and, thus, could not form basis for grant of summary judgment); 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane,

Federal Practice and Procedure § 2738, at 346-350 & n. 32 (1998) (collecting cases requiring that affidavits must be based upon personal knowledge).

This competence requirement also means that the affidavit must not rest on unsupported conclusions. That is, even if someone has "personal knowledge" of a subject or an event, they may not guess. Simply put, speculative statements in an affidavit, standing alone, are insufficient to withstand a properly supported motion for summary judgment. See, e.g., Bradley v. Widnall, 232 F.3d 626, (8th Cir. 2000) (retaliation case) (citing Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997)); 10B Charles A. Wright, Arthur R. Miller & Mary Kay Kane, Federal Practice and Procedure § 2738, at 346-356 & n. 33 (collecting cases and stating: "Thus, ultimate or conclusory facts and conclusions of law . . . cannot be utilized on a summary-judgment motion.").

Here the affidavit submitted by the plaintiff is not premised on personal knowledge. It also rests on unsupported conclusions. Moreover, in certain respects, the affidavit is not relevant to the plaintiff's claim against Keelan. Five examples will illustrate the point.

> ***Example One:*** The affidavit states that Keelan "is the individual charged with the responsibility of hiring and firing . . . ." (Filing 54 ¶ 17.) Peetz provides no background whatsoever for why she knows this fact to be true. As Peetz was only a clerk, and a probationary clerk at that, and because Peetz swears that Noonan, and not Keelan, was her supervisor, there is no reason to assume that Keelan has personal knowledge about the powers of other managers.[4]

---

[4]On the contrary, a competent affidavit, the affidavit of Colonel Rein, who is not a party and who was responsible for all the employees in Human Relations (including Keelan), establishes that Keelan had no power to hire and fire and that Keelan was not responsible for the decision to terminate Peetz.

*Example Two:* The affidavit states that "Keelan knew or should have known that the actions of Defendant Noonan were retaliatory in nature." (Id. ¶ 18.) Again, there are no facts set forth in the affidavit upon which a disinterested observer could determine whether Peetz had good reason for this otherwise speculative assertion. Moreover, the "should have known" conclusion is irrelevant to the claims. Keelan cannot be liable on the theories asserted by Peetz based upon notions of negligence.

*Example Three:* The affidavit also asserts that Keelan "caused to be placed in Plaintiff's personnel file derogatory and false documents that caused her to be placed in a false light." (Id. ¶ 19.[5]) Once again, the allegation is unsupported by evidence of personal knowledge regarding how Peetz knew what Keelan had done with her file. Moreover, we have no way of knowing how Peetz knew that the information was both derogatory and false. Indeed, the words "derogatory" and "false" are unsupported conclusions. Peetz has failed to specify the documents, the words or her basis for knowing that the information portrayed her in a false light. Lastly, without facts indicating that Keelan *knew* the documents were false and derogatory, the assertion that the documents were derogatory and false is not relevant. Keelan cannot have liability under the theories asserted by Peetz for innocently placing untrue or disparaging documents in a personnel file.

*Example Four:* Peetz swears that "[a]fter utilizing these documents for Plaintiff's termination, Defendant Keelan removed them from the Plaintiff's file." (Id. ¶ 20.) This allegation is not supported by personal

---

[5]See footnote 1 for the technical problems with paragraph 19.

knowledge and it is also a conclusion.[6] That is, without any supporting facts, the assertion implies that Keelan used the documents to terminate Peetz. In addition, the mere fact that Keelan removed documents *after* Peetz was terminated, standing alone, is not relevant to any of the claims asserted by Peetz.

*Example Five:* Perhaps the best indicator of the insufficiency of the affidavit is that the affidavit repeats verbatim portions of the amended complaint prepared by counsel without adding any supporting facts. An affidavit that merely parrots the bare bones of a complaint cannot defeat a properly supported motion for summary judgment. Indeed, the Rule provides that an affidavit tendered in response to a motion for summary judgment "may not rest upon the mere allegations . . . of the adverse party's pleading, but . . . must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e).

### III. CONCLUSION

Based upon the undisputed material facts, Keelan's involvement in the plaintiff's termination was so minimal that he cannot have liability to the plaintiff under the First Amendment or Nebraska's public policy. Therefore, I will grant Keelan's motion for summary judgment.

Accordingly,

---

[6] Remember that Keelan explained in his affidavit that he removed certain documents and gave them to investigators *after* Peetz was terminated and complained to the Governor. He swears that the documents were returned upon completion of the investigation.

IT IS ORDERED that Keelan's motion for summary (filing 51) is granted and the plaintiff shall take nothing against Sidney Keelan. Judgment will be withheld until the completion of this case.

October 4, 2005. BY THE COURT:

*s/Richard G. Kopf*
United States District Judge